Good morning. May it please the Court. Mark Ferrario, appearing on behalf of Reading. You have before you a case that, quite frankly, when you take a fresh look at it, which is what I've had to do because we were brought in to file a substitute reply brief. And, by the way, I'd like to reserve five minutes for rebuttal, if I could, please. When you look at it anew, it becomes clear that the District Court judge overstepped his bounds in granting summary judgment. What the judge did was he took a very liberal view, if you will, of an integrated set of documents to avoid what he characterized as a harsh result, I think, or what the parties . . . Absurd. Absurd. Call it whatever you'd like. But what a District Court judge can't do is rewrite a contract. And the fact that you would highlight the word absurd kind of brings me to some comments that were made in the respondent's brief characterizing the deal as extortionate and things like that and calling my client a green mailer. I've been on both sides of these, and, quite frankly, I don't find hyperbole like that serves either party. What you had here was sophisticated business people on both sides of a deal initially and then when they settled the deal. And you had sophisticated business people that negotiated a number of agreements, the settlement agreement, the promissory note, the mortgage, the shareholder pledge agreement, and the collateral assignment. All of these documents were part of the settlement of a dispute that came about through mediation. The parties were free to negotiate any terms that they'd liked. The fact that the respondents would call the deal extortionate, quite frankly, is absurd to me. Because one thing I know when you're in mediation. Back to the District Court for a moment. Because what the District Court said is that these were documents that were negotiated and entered into at the same time. It was all part of the same deal. It was an integrated settlement. So the court was trying to read the documents in context in order to discern what the parties' intent were at the time that they negotiated these agreements. And that's how he came to his conclusion that it would be, quote, unquote, absurd to interpret the agreements any differently. Well, and the District Court judge was simply wrong. You start with the settlement agreement. If the respondent wanted an opportunity to cure a breach of Section 5.2, and let's talk about that initially, okay, which was the one where you had to destroy documents and provide certification. If they wanted a cure, they could have bargained for that, and you would have found that in the settlement agreement. They simply didn't do it. Where the judge went awry, and if you look at the agreements, and I know you've read the briefs, and I'm not going to go through them. This isn't a spicy case, if you will. So, and just let's start from the pledge agreement. When you start, the pledge agreement is a separate document. It pledges membership interests. And it starts at the top, and it says, this agreement, that's a separate agreement. The judge amalgamated everything in an effort to get at the result he wanted, in my opinion. And you can't do that. And in doing that, he did violence to the fact that the parties negotiated separate and distinct terms for each and every one of these agreements. I don't have to tell this court that there's a difference between a membership pledge agreement and a mortgage. I don't have to tell this court that you could have a note unsecured. These are all separate and distinct documents dealing with separate and distinct events. And that's how the deal came down. Who crafted these documents? If you look at the agreement, it's clear that both sides crafted the documents. No one was responsible for drafting them. No. There is nothing in the agreement. In fact, there's language in there that says that no one's going to hold the other party responsible, saying they're the drafter, that type of stuff. This, again, Your Honor, what occurred here was there was a lengthy mediation. I wasn't there. I mean, I inherited this. There was a lengthy mediation. And at the conclusion of the mediation, sophisticated parties negotiated these deals, okay? And it's not for the district court judge to go back and cut a new deal. And that's simply what occurred here. And I can tell you there's something else that came out to me as I was reading through this. You don't even have to get to all of the various language in the mortgage and language in the pledge agreement. Just look at the note, okay? The note says what it says, and then it has the default interest payment, okay? And the note says that from a definitional standpoint, you can look at the mortgage. Which paragraph of the note are you referring to? Look at the note. I got the note. I'm just looking. It's on page 2, 3B. What's the ER? It's ER 137. Okay. Okay, so this paragraph, the event of default interest late charge. Right, and if you go down to the bottom, it says, upon the occurrence of an event of default, this is under 3B, as such term is defined in the mortgage or any other loan document. So what the note did is it incorporated definitions, definitionally some language that was in the mortgage. If you look at the mortgage, it makes it clear that an event of default is a breach of the settlement agreement. Period. Plain and simple. My client sued to recover under the note. They had the option to do that. They didn't have to go after the real property securing the note. They didn't have to go after the membership interest that were pledged under the other two agreements. They had multiple remedies to pursue here. And they pursued the remedy under the note. Nothing more, nothing less. Now, there is no dispute that there was a default on the settlement agreement. There's no disputes to that. They didn't provide the appropriate certifications in time. There was no opportunity to cure that under the note or under the mortgage, if you want to incorporate the mortgage terms. I thought that there were still questions on whether there was a breach and the materiality of the breach that the district court didn't reach. So if we agree with you that these were sophisticated parties, that the difference in language between the cure provisions in the mortgage and in the pledge agreements were purposeful and we send it back, would the parties then litigate the materiality of the breach at that point? I don't think we have to. Do you know why? Because I can turn to the agreement itself. And you know what the parties said on this 5.2 obligation under the settlement agreement? The parties said it was material. So there's nothing there to litigate. It's already been determined. The failure to provide the certification was material? Absolutely. Look at 5.2. Let me just. 5.2 of? Of the settlement agreement. Hold on. Now, we've got just one second. Settlement agreement. Yes. Hang on. Let me just find it. 5.2? Yes, Your Honor. Wait a minute. I may have left. Okay. I got it. 5.2, get to the end. It says that it starts out with a Cole report and a Tahuni order. Yes. And you get to the end, and it makes it very clear that the parties would have never struck this deal, but for that provision being included in the agreement. Yes. And if you look at 5.2, it says within 45 days it's material? Absolutely. Okay. And B, shall use their best efforts to procure and destroy all copies and so on? Yes, and if you look at. Okay, that's material. Sorry, I'm sorry. I didn't realize you were continuing. And shall certify in writing that the plaintiff parties have used their best efforts. Now, my understanding is that the certification was filed timely. They did file timely. Certified. Yeah. And they certified to Paragraph A. But they omitted two people who, when they said, they sent a letter saying, we used our best efforts, but they failed to list two people. And so what it comes down to is that you're saying no matter how limited the default, if it's a default, was, that accelerates the mortgage? Absolutely. And if you look at. And we should rely, and it's conclusive, that the last sentence of that section is dispositive. I am. Okay. And there's no question about it. There's no discussion. There's nothing that can come in under Hawaii law to say what the context of that statement was? I don't believe there is, Your Honor. Not when you have agreements that were heavily negotiated through months of mediation. Well, I've been in lots of those too, counsel. And at least under California law, I'm not an expert on Hawaii law. But there is extrinsic evidence, and you're saying Hawaii didn't allow that? Your Honor, under certain circumstances, and the cases are in our brief, that is permitted. But here, where you have. Well, that's why I ask whether there's going to be continuing litigation at that point, because this is something that the district court didn't reach. As I understand it, or let me phrase it this way. Am I correct in understanding and referring to 5.2 that you rely on, that A was complied with, B was complied with, C was partially complied with? I believe you are correct. There was partial compliance. Let's put it this way. There was partial compliance with Section 5.2. At the end of Section 5.2, the defendant parties expressly acknowledged that this section was material to this agreement and it has been necessary to induce the plaintiff parties, my client, to enter into this agreement. You could not have been clearer during the negotiations. And, you know, this begs the question. The section is material. It's not as if they blew it up. They went substantially complied. And so where does it say that there's no dispute on this language rules out the notion that substantial compliance and the failure to fully comply itself is not material to a breach? There's no language in the agreement. Well, that's your opinion. It just says you substantially comply. That's your opinion. And you're saying that under Hawaii law there's nothing for the judge to do except we should just read that as saying 100% compliance, that's what the parties intended. No matter how little the omission was. When you have an agreement like this that was heavily negotiated and you have specific language to that effect, Your Honor, this doesn't become a continuum where if one person or maybe two do have substantial compliance, then three, then four. And this actually gets me to a point that I wanted to make because with all the vitriol going back and forth, we wouldn't be here but for the fact they didn't comply. And then I want to also touch, and that they breached the agreement. You wanted to save some time. You're getting close to the end. I can see it. And then all I'll say is on the records issue and the inspection, the one thing that I think the district court should have done was should have allowed my prior counsel the opportunity to make the offer approved. Given the vagaries of Hawaii law in regard to the Mediation Act, there was certainly discretion that's vested in the district court judge to allow her to counter the accusations that were made about the promise at mediation. And that should have been done. And I'll save the other minute that I have. Thank you. Thank you. Good morning. May it please the Court. I'm Steve Eggestall. I represent the Malulani Group Limited Defendant Appalee. I'll refer to that entity as TMG. This morning I'll highlight points of the three issues in our brief, but I'd like to begin by discussing some points that were just made by counsel. The integration clause in the settlement agreement is the only integration clause in any of the settlement documents. There's no integration clause in the mortgage or the pledge agreements. The integration clause makes all of the exhibits that are attached to it, which includes the pledge agreement and includes the mortgage, integral parts of the agreement. That's a starting point that the district court looked at. And we can start there and look at all of the documents too, except that there were clear differences in the cure provisions. These were sophisticated parties represented by counsel. Why can't we look at the documents in total and conclude that those differences were purposeful? Your Honor. And just looking at the plain language as well, they were subject to paragraph 7.1 subsection I in the definition of events of default in the pledge agreement. There wasn't similar language mirrored in the mortgage. The parties must have intended it that way. And we'll just read it and apply the plain language of these provisions. Yes, Your Honor. I think when you read all of the agreements together that they are consistent on the material points. Redding makes an argument based on the definition of loan document in the mortgage agreement 7.11 Romanette 10 is different from the definition of loan document in the pledge agreements. But the court doesn't need to go to that definition of loan document if it looks at the preceding. And I'll get into that analysis. So if you look at the mortgage agreement 7.11, and this is ER 162. Hold on a second. ER 162. So section 7.11 Romanette 2 reads, and I quote, any breach by a defendant party as such term is defined in the settlement agreement of an obligation of such party under the settlement agreement or any other settlement document. So a breach of the settlement agreement is an event of default under the mortgage. When you go down to, this is now ER 163, and you go down to section 7.11 Romanette 10, it says if a default shall be continuing under any of the other obligations, agreements, undertakings, terms, covenants, provisions, or conditions of this mortgage, and it continues, or any other loan document not otherwise referenced in this section, that same language, mutatis mutandis, changing out mortgage agreement for pledge agreement, is the same in the pledge agreements. And so what this means is that a breach of the settlement agreement is an event of default that is curable under section 7.11 Romanette 10. So you don't need to get to the definition of loan document in either the mortgage or in the pledge agreement. I'm sorry. Walk me through that 10. I'll walk you through the progression. So 7.11 is called event of default defined. Yeah, I got that. Romanette 2, it says any breach by defendant party, and the settlement agreement defines. Yeah, so there has been a breach here. Then you go down to 7.11 Romanette 10, and it says if a default shall be continuing under any of the other obligations and so forth provisions of this mortgage, well, section 7.11 Romanette 2 is a provision of the mortgage, and it refers to a default, a breach of the settlement agreement. So reading those two together, a breach of the settlement agreement is a default that is curable under section 7.11 Romanette 10, and that allows the court not to have to get to the language or any other loan document which Redding relies on to distinguish the pledge agreements from the mortgage agreement. He relies on the note, though. Well, the – well, let me – as Judge Wynn noted and as you started out at the beginning, it's an integrated agreement, but it consists of all these separate documents. Correct. And these separate documents were designed for a different purpose. That's correct. Well, you have a little hesitation there. Well, they each have their own purpose, but the larger purpose, the unifying purpose, was to settle a dispute. Well, let me ask you this. To complete this whole agreement, was there a separate need for the pledge agreement? Yes, there was a need for the pledge agreement to collateralize the note. Right. And there was a separate need for the note. That's correct. And the mortgage to back up the note. Correct. So I think the way to look at it is the settlement agreement is the mother document with the integration clause saying that all of these exhibits that are attached are integral parts of this settlement agreement. Okay, so he pointed us directly to the note. So this is what we're – this is the focus of our – Well, the breach was of Section 5.2 of the settlement agreement. The settlement agreement required – I should say he was attempting to invoke their rights under the note. Well, those rights could have been invoked under various agreements. But they chose to exercise them under the note, which is to advance the balance of the note. Correct? Well, that's correct. But the breach ultimately that we're talking about is a breach of Section 5.2 of the settlement agreement, the failure to – You point to this overall arcing settlement agreement. It has these various documents. They say, well, we're going to – there's a breach and a failure to cure. We're going to – they say we're going to invoke our rights under the note. And you say, well, wait a minute. We have these other documents. Under those documents, it's curable. That must also apply to the note, but that can't be. Your Honor, I don't have an answer for that. Okay. Address the materiality issue. Well, as Your Honor pointed out, it was performed in large part, and there was a delay on getting, I think, two more signatures from two other people. So I don't see how it could have been material on the district. Well, the contract says this section is material. No other part of these documents ever said anything about materiality, and yet this sentence is put in at the end of the section. So how do you elide that? What's left for the district court to wrestle with on materiality? I don't know, Your Honor. Well, wait a minute. There is language in 5.2, the opening paragraph, I mean, that suggests that best efforts, it reads in best, there's a best efforts provision. Why doesn't that carry through to the overall clause, so to speak? Well, Your Honor, I think it would. I think that does frame the clause. I was trying to respond to Judge Fischer's question. Well, maybe I misunderstood your answer. Maybe you misunderstood my question. Yeah, maybe that's the problem. Let's reframe it. Okay, you have a whole section. I walked through the section with counsel on the other side, and he said we don't have to and you can't get into the materiality of the omission of two folks in the certification. Substantial compliance is ruled out by that last sentence. Are you conceding that? It's the same issue that we went through with opposing counsel, which is that under 5.2 of the settlement agreement, almost everything was complied with except two defendants' names were missing from that final certification under subsection C. The district court didn't reach the question of whether the breach was material. Is there anything left to decide on that question, if I'm understanding where Judge Fischer is going correctly? Or are you saying that there's nothing left to litigate because any breach would be a material breach under 5.2 of the settlement agreement? I'm not conceding that, Your Honor. But you don't have any counterargument? I don't have a counterargument or any case authority. Is extrinsic evidence permissible in order to reach that determination? Have you researched that issue? No, I have not. Can I get back to your definition of 7.11, because I want to make sure that I understand your interpretation of why a Your argument is that a violation of the settlement agreement is a provision or condition of the mortgage as defined by 7.11 subsection 2. Is that correct? That's correct. But under that reading, would the terms other obligations or conditions not otherwise referred in this section, would that be rendered superfluous? No, Your Honor. And why not? The other refers to the Romanette sections above it, which are other obligations of the mortgage. So if you look at Romanette 7.11, 6, 7, 8, and 9, those are obligations of the mortgage. And I think what the other is pointing out is it's saying if a default shall be continuing under any of the other obligations, which then would include 7.11 Romanette 2. And Your Honor, turning to the second issue on the Mediation Act, the Mediation Act was effective in 2013. The mediation took place in 2009. Hawaii statutes are not applied retrospectively under Hawaii revised statute. Well, they're applied to agreements that were made. But you're talking, it doesn't go retroactively to mediations that have already happened. That's correct. That's the argument we're making. And that's consistent with the, the case that both of the parties cited and the court also cited the holding of that case, the Dawkins case. I think we have the argument on that. And then lastly, on whether the district court abused its discretion in not allowing evidence during the summary judgment hearing, Redding had noticed that that was an issue for some time. Redding had gone before a federal magistrate in camera on a matter that was related to the mediation. So Redding had the opportunity to provide evidence. Redding waited until the summary judgment hearing to offer evidence. Okay, counsel. Thank you. Thank you. Very briefly. On the last point, I think the record is very clear. Ms. Bronster was asking, it indicated that she was concerned about waiving the privilege and Hawaii has very strict waiver laws on privilege. And so she was asking the court to exercise this discretion and let her put in some affidavits or some declarations once she knew what the judge's position was. And I think that discretion should have been granted, but more importantly, let's go back to the beginning. The only reason we're here torturing these documents is because a, they breached and B, they don't, they never bargained for a cure provision under the settlement agreement. And if we just look at the documents, but they didn't, they provide a certification that the two missing certification later. Absolutely. After I mean, what you just, the whole purpose was to get the certifications. You got them. No, your honor. The whole purpose is set forth in section five. How late were they on those certifications? They were, I think four months later, a couple months late, something like that. But that, but that was important to my client. Look at what was bargained for. That was a specific provision put in the agreement. It was very important to search and destroy. Your honor sees that in all sorts of, of agreements. Sometimes it's an IP context. Sometimes it's anytime you're dealing with confidential records, that's important, but here it was more important. And you can see why there was a lot of personal stuff in there and it was specifically made material. This is what I don't get after eight months of mediation or however long it was. And after the negotiation of all these deals, why couldn't they comply? Why couldn't they comply with our request to get records? Why, why, why? Those questions have never been asked. They should have been on top of this and they weren't. We're only here because they don't like the agreement they struck and they breached the agreement. That's it. Thank you. Got it. But how do you really feel? I'm feeling better now that this is over. Thank you. Thank you, counsel. We appreciate your arguments this morning. The matter is submitted at this time.
judges: Fisher, Paez, Nguyen